## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE (WILMINGTON)

|  |  |  |
|---|---|---|
| BRICKLAYERS AND ALLIED CRAFTS UNION LOCAL NO. 1 OF DE/PA WELFARE FUND, et al. | : : : : | |
| Plaintiffs, | : : : | Civil Action No. 07- 145 (GMS) |
| v. | : : | |
| EDWARD WILKINSON CO., INC. | : : | |
| Defendant. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT BY DEFAULT UNDER FEDERAL RULE OF CIVIL PROCEDURE 55(b) AGAINST DEFENDANT, EDWARD WILKINSON CO., INC.

Plaintiffs, the Bricklayers And Allied Crafts Union Local No. 1 of DE/PA Welfare Fund ("Welfare Fund"), the Bricklayers Local Union No. 1 Pension Trust ("Pension Fund") and the Bricklayers And Allied Crafts Union Local No. 1 of DE/PA Annuity Fund ("Annuity Fund" and together with Welfare Fund and Pension Fund, "Funds" or "Plaintiffs"), by their legal counsel, file this Memorandum in Support of their Motion for Judgment by Default against Defendant, Edward Wilkinson Co., Inc.

Defendant, Edward Wilkinson Co., Inc. ("Company" or "Defendant"), is party to a collective bargaining agreement ("Agreement") with the Bricklayers Local Union No. 1 of Delaware (Puchalski Declaration, ¶ 4). The Agreement provides for the payment of contributions to the Funds for time worked by or paid to employees who perform work covered by the terms and conditions of the Agreement (Agreement, Art. 5, Part A). The Agreement also requires that the contributions be received by the Funds no later than the fifteenth (15th) day of the month following the month in

188003-1

which the work was performed (<u>Id.</u>). Failure to make these contributions timely, or to submit either

incorrect or late remittance reports, results in a delinquency to the Funds (Puchalski Declaration ¶ 6).

The Funds' records reveal that Defendant did not submit the contractually-required

contributions in a timely manner. Defendant currently owes the Funds $227,034.12 in contributions

for the periods of January 2006 through December 2006, February 2007 through July 2007 and the

month of September, $20,072.88, in interest calculated through October 31, 2007, and $33,716.03 in

liquidated damages (<u>Id.</u> at ¶ 5). The Funds' Trustees are obligated, as part of their fiduciary duties, to

give each employee-participant credit for the time worked or paid to him by his employer

notwithstanding whether employer contributions are made to the Funds. Given the Defendant's

failure to timely submit its remittance reports and because the information necessary to determine the

precise amount of contributions due and owing to the Funds is in the exclusive possession of the

Company, the Funds have requested that they be permitted to perform an audit of the Company's

payroll books and records for all periods in which the Company is obligated, pursuant to the

Agreement, to submit fringe benefit contributions to the Funds. Generally accepted accounting

procedures require that the actual payroll records be reviewed in order to make this determination.

Defendant failed to file an Answer or responsive pleading within twenty (20) days of service,

and on May 1, 2007, Plaintiff filed a Request to Clerk to Enter Default pursuant to Fed. R. Civ. P.

55(a).

**ARGUMENT**

**A.    ENTRY OF A JUDGMENT AGAINST THE COMPANY FOR UNPAID CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES AND ATTORNEYS' FEES AND COSTS IS ENTIRELY APPROPRIATE**

As a party to the Agreement, Company is liable to the Funds not only under the Agreement but also pursuant to federal law. Specifically, Section 515 of ERISA, 29 U.S.C. § 1145 provides:

> "Every Employer who is obligated to make contributions to a multiemployer plan...under the terms of a collectively-bargained agreement...shall make such contributions in accordance with such agreement."

If the employer fails to make the contributions as required by the Agreement and Section 515, then the employer is subject to the provisions of Section 502(b)(2) of ERISA, 29 U.S.C. § 1132(g)(2). Section 502(g)(2) provides for the mandatory award of the following:

(A)    the unpaid contributions,

(B)    interest on the unpaid contributions,

(C)    an amount equal to the greater of:

    (I)    interest on the unpaid contributions, or

    (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court under Subparagraph (a),

(D)    reasonable attorneys' fees and costs of the action, to be paid by the defendant, and

(E)    such other legal or equitable relief as the court deems appropriate.

The failure of the Company to comply with its contractual and statutory obligations results in a substantial adverse impact on the Funds' ability to meet its legal obligations. The Funds are

obligated by express mandates of the Employee Retirement Income Security Act of 1974 and by the documents and instruments by which the Funds are administered to provide health and welfare benefits and pension credits to the Company's employees who are otherwise eligible to receive them. 29 C.F.R. 2530-200b2(a)(1) and (2); Central States, S.E. & S.W. Areas Pension Fund v. Admiral Merchants Motor Freight, Inc., 511 F.Supp. 38 (D.Minn. 1980), aff'd sub nom, Central States, S.E. & S.W. Areas Pension Fund v. Jack Cole-Dixie Highway the Company, Inc., 642 F.2d 1122 (8th Cir. 1981). The Funds are required to provide these benefits and credits regardless of whether the Company makes the contributions. The result is a significant drain on the resources of the Funds.

Additionally, when an employer fails to remit its contributions, the Funds lose the income that they could have earned by investing these contributions. Combining this loss of investment income with the requirement to continue to pay benefits will eventually affect the actuarial soundness of the Funds as well as deplete resources available to pay future benefits. Furthermore, the Funds incur additional administrative expenses as a result of an employer's failure to pay its contributions. These losses and added expenses significantly impair the Funds' ability to continue to provide benefits to not only the Company's employees, but to employees of companies that have complied with their contractual obligations.

In its Amended Complaint, the Funds allege that Company failed to make fringe benefit contributions, interest, liquidated damages and attorneys' fees and costs to the Funds. These allegations, together with all other allegations of fact set forth in the Amended Complaint against the Company filed in this action, must be taken as true as Company has not responded to each of these factual assertions. Thomson v. Wooster, 114 U.S. 104 (1885); Au Bon Pain Corporation v. Artect,

Inc., 653 F.2d 61 (2d Cir. 1981); Kelly v. Carr, 567 F.Supp. 831, 840 (W.D. MI 1983); Danning v. Lavine, 572 F.2d 1386-89 (9th Cir. 1978). So in accordance with 29 U.S.C. § 1132(g)(2), the Funds are entitled to an award of contributions, liquidated damages, interest and attorneys' fees and costs. United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc., 787 F.2d 128 (3d Cir. 1986).

**B.    ENTRY OF AN ORDER TO COMPEL THE DEFENDANT TO PRODUCE ITS PAYROLL BOOKS AND RECORDS AND TO COMPLY WITH ITS CONTRACTUAL OBLIGATIONS IS ENTIRELY APPROPRIATE**

The Company is party to the Agreement and therefore to the Agreement and Declaration of Trust of the Funds. The Funds' trustees' scope of authority and responsible under ERISA is defined in part by the common law of trusts. Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc., 105 S.Ct. 2833, 2840 (1985). "Under the common law of trusts . . .trustees are understood to have all such powers as are necessary or appropriate for the carrying out of the purposes of the trust." Id.

The purpose of the Funds is to provide benefits to the participants and beneficiaries. In order to effectuate this purpose, the trustee must ensure that all the contributions that are required to be made under the Agreement and the terms of the Agreement and Declaration of Trust of the Funds are made. The trustees must have the ability to ascertain exactly what contributions are due and owing to the Funds under such documents. When an employer fails to remit the contractually-required reports, the Funds' only method of determining the amount of contributions that are due and owing to the Funds is an audit. It is understood that trustees have all such powers as are necessary or appropriate for the carrying out of the purposes of the trust. In the absence of contractually-required remittance

reports, it is necessary and appropriate to audit the payroll records of the employer in question. Because this is necessary and appropriate, trustees have the power to audit Company's payroll books and records.

The determination of an employee's eligibility for benefits is made based upon information contained on the remittance reports. If the remittance reports are not submitted or contain incorrect information, then a proper determination of eligibility is impossible. In such a case, the only means of obtaining the necessary information is to review the employer's payroll records.

An employer's failure to remit its contributions also causes the Funds to lose the income that they could have earned by investing these contributions. Combining this loss of investment income with the requirement to continue to pay benefits will eventually affect the ability of the Funds to pay future benefits. Furthermore, the Funds incur additional administrative expenses which significantly impair the Funds' ability to continue to provide benefits to not only the Company's employees, but to employees of companies that have complied with their contractual obligation.

The Company failed to submit remittance reports and contributions in accordance with the provisions of the Agreement. A precise determination of the amount of the delinquency is not possible because the Funds have not been permitted to review the Company's payroll books and records.

Finally, in light of Company's failure to comply with its contractual and statutory obligations to the Funds to submit timely, accurate remittance reports and contributions each month (Puchalski Declaration, ¶ 6) and the irreparable harm which Company's malfeasance causes the Funds, the Funds respectfully request the injunctive relief which is set forth in its proposed default judgment.

Laborers' Fringe Benefit Funds v. Northwest Concrete, 640 F.2d 1350, 1352 (6th Cir. 1981); IBPAT

Union and Industry Pension Fund v. Hartline-Thomas, Inc., 4 EBC 1199, 1200 (D.D.C. 1983);

Teamsters Local 639 - Employers Trust v. Jones & Artis Construction Co., 640 F.Supp. 223 (D.D.C.

1986).

Given the clear language of the Agreement and obligations mandated by ERISA, this Court

should order the Defendant not only to produce all outstanding remittance reports together with the

Company's payroll books and records so that a precise determination of the amount owed can be

made, but also pay all outstanding contributions plus the contributions and other related amounts

determined to be due and owing for the audit. Furthermore, this Court should order the Defendant to

continue to submit its monthly contributions and remittance reports in a timely fashion herein.

## CONCLUSION

Accordingly, in light of the clear statutory intent of ERISA, it is respectfully requested that

this Court grant the Funds the relief requested in their Motion for Default Judgment.

Respectfully submitted,

FERRY & JOSEPH, P.A.

BY: _____

RICK S. MILLER, ESQUIRE
BAR IDENTIFICATION NO. 3418
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
(302) 575-1555
Attorney for Plaintiffs

Dated: __10/29/07__

188003-1                                    7

OF COUNSEL:
Shanna M. Cramer, Esquire
Jennifer L. Hope, Esquire
JENNINGS SIGMOND P.C.
The Penn Mutual Towers, 16th Floor
510 Walnut Street
Philadelphia, PA 19106
(215) 351-0657/0617

## CERTIFICATE OF SERVICE

I, Rick S. Miller, Esquire, state under penalty of perjury that I caused a copy of the foregoing

Motion for Judgment by Default by the Court Pursuant to Federal Rule of Civil Procedure 55(b)(2)

to be served via first class mail, postage prepaid on the date and to the address below:

Edward Wilkinson Co., Inc.
90 Blue Hen Drive
Newark, DE  19713

and

United States Corporation Company
2711 Centerville Road
Suite 400
Wilmington, DE 19808

Date: _____                    _____
                                         RICK S. MILLER, ESQUIRE

188003-1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE (WILMINGTON)

BRICKLAYERS AND ALLIED CRAFTS     :
    UNION LOCAL NO. 1 OF DE/PA WELFARE     :
    FUND, et al.     :
          :   Civil Action No. 07- 145 (GMS)
          Plaintiffs     :
          :
    v.     :
          :
EDWARD WILKINSON CO., INC.     :
          :
          Defendant     :

### DECLARATION OF DAVID PUCHALSKI

David Puchalski states, under penalty of perjury, that the following is true and correct.

1.      My name is David Puchalski, and my business address is GEM Group, Brandywine Corporate Center, 650 Naamans Road, Suite 303, Claymont, Delaware 19703.

2.      GEM Group is the Administrator of the Bricklayers And Allied Crafts Union Local No. 1 of DE/PA Welfare Fund ("Welfare Fund"), the Bricklayers Local Union No. 1 Pension Trust ("Pension Fund") and the Bricklayers And Allied Crafts Union Local No. 1 of DE/PA Annuity Fund ("Annuity Fund" and together with Welfare Fund and Pension Fund, "Funds" or "Plaintiffs") and I am authorized to make this Declaration on behalf of the Plaintiff.

3.      As the Account Executive of the Funds, GEM Group is charged with keeping and maintaining records of contributions received by the Funds, and maintaining individual records of each person, firm and corporation required to make such contributions to the Funds.

4.      I have personal knowledge of the contents of the collective bargaining agreement which exists between Bricklayers Local Union No. 1 of Delaware ("Union") and Defendant, Edward Wilkinson Co., Inc. ("Defendant" or "Company").

5.      My review of the regular business records maintained by the Funds shows that:

**EXHIBIT**

1

    (a)    Defendant failed to submit contributions in the amount of $227,034.12 for the period of January 2006 through December 2006, February through July 2007 and the month of September 2007 in the manner prescribed by the collective bargaining agreement;

    (b)    Defendant owes liquidated damages in the amount of $33,716.03. The assessed liquidated damages are itemized in the Statement of Employer Status ("Statement"). This Statement is prepared in the regular course of business at GEM Group and sent monthly to delinquent employers, the Union and our counsel. A copy of the Statement is attached to the Motion as Exhibit 2.

    (c)    Defendant owes interest in the amount of $20,072.88 on the unpaid contributions and the contributions paid after their due date accrued through October 31, 2007. Interest is calculated pursuant to 29 U.S.C. § 1132(g)(2)(B) and 26 U.S.C. § 6621.

    6.    Despite a continuing contractual obligation to do so, Company routinely fails to submit timely contributions and monthly remittance reports. The Funds and their Trustees are required to pay benefits to all properly eligible employees of contributing employers. Employer contributions and the earnings, which the Funds receive by investing these contributions, comprise the assets from which the Funds pay benefits. Employees of contributing employers can continue to accrue benefit eligibility regardless of whether their employers pay the contributions to the Funds on the hours they work or are paid. The Funds' obligation to provide these benefits to otherwise eligible employees is absolute and continues even if the employers fail to pay their required contributions. When employers fail to pay their contributions or do not pay them timely, the Funds are deprived of the investment income it otherwise could have earned. In addition, the Funds also must engage in time consuming and costly efforts to collect the unpaid contributions. These efforts include letters and phone calls to the employer and the local union, investigating other sources for collection (i.e.

labor and materialmens bonds, mechanics liens, possible claims under varying State construction lien laws) and attempting to calculate delinquency amounts through other sources (e.g. paystubs, job steward's reports, and certified payrolls on publicly funded projects) if available. The Funds also have to process benefit eligibility and benefit claims manually so that participants employed by the delinquent employer are not deprived of benefits. The actual losses and added costs (both in terms of dollar amounts, capital, and manpower) incurred by the Funds in connection with an employer contribution delinquency are not capable of precise determination, but are substantial. The refusal of an employer to contribute as it is bound means irreparable harm and injury to the Funds -- an obligation to make benefit payments to employees without the necessary contributions from the employer to cover those benefits. This also deprives the Funds of assets that would otherwise be available to pay claims of employees of other employers that have timely paid their contribution obligations. The Company in this case, therefore, should be required to submit timely current contributions and remittance reports in the future and to immediately submit all remittance reports and contributions that are outstanding on the date judgment is entered in the present proceeding and should also be required to submit to an audit so that the Funds may further determine the precise amounts owed.

7.    I have executed this Declaration in support of the Plaintiffs' Motion for Default Judgment against Defendant, and request this Court to consider the same as proof in support of the allegations contained in the Complaint of the Funds and other facts stated in this Declaration.

> Pursuant to 28 U.S.C. § 1746,
> I declare under penalty of
> perjury that the foregoing is true and correct.

Executed on: ___10/25/07___

_____
DAVID PUCHALSKI

GEMGroup

Bricklayers Local Union 1 of Delaware
C/O GEMGroup - Claymont
Brandywine Corporate Center
Suite 303
650 Naamans Road
Claymont, DE        19703

| Phone | : | 302.798.6801 |
|---|---|---|
| Toll Free | : | 800.223.7405 |
| Fax | : | 302.798.6929 |

Edward J Wilkinson Co Inc
90 Blue Hen Drive
Newark, DE        19713

Notice Date:    October 23, 2007

# Statement of Employer Status

Below is a statement of your account's status based on reports processed as of the date of this notice. Please submit payment promptly to avoid additional charges. If no employees were employed for the work period(s) indicated on this report, please specify and return this report to the Fund Office at the address listed above. If you should require additional information, you may either refer back to the Discrepancy Invoice(s), or call the Transmittal Department at the Fund Office at the phone number listed above.

**Bricklayers and Stone Masons**

| Invoice Number | Invoice Date | Work Month | Date Received | Postmark Date | Description | Discrepancy Amount |
|---|---|---|---|---|---|---|
| 154624 | 06/29/2006 | 01/2006 | 06/13/2006 | 06/12/2006 | Liquidated Damages | $1039.71 |
| 176172 | 10/31/2007 | 01/2006 | | | Interest on Late Contributions | $127.52 |
| 176172 | 10/31/2007 | 01/2006 | | | Liquidated Damages | $106.26 |
| 158433 | 09/25/2006 | 01/2006 | | | Pay Stub Shortage | $817.22 |
| 156142 | 08/01/2006 | 01/2006 | | | Pay Stub Shortage | $245.49 |
| 154625 | 06/29/2006 | 02/2006 | 06/13/2006 | 06/12/2006 | Liquidated Damages | $1375.47 |
| 176173 | 10/31/2007 | 02/2006 | | | Liquidated Damages | $155.25 |
| 156143 | 08/01/2006 | 02/2006 | | | Pay Stub Shortage | $1552.59 |
| 176173 | 10/31/2007 | 02/2006 | | | Interest on Late Contributions | $186.31 |
| 154419 | 06/23/2006 | 03/2006 | | | Report Received No Money | $23083.17 |
| 176174 | 10/31/2007 | 03/2006 | | | Liquidated Damages | $2476.51 |
| 176174 | 10/31/2007 | 03/2006 | | | Interest on Late Contributions | $2971.81 |
| 156144 | 08/01/2006 | 03/2006 | | | Pay Stub Shortage | $1652.11 |
| 156139 | 06/29/2006 | 03/2006 | | | Pay Stub Shortage | $29.85 |
| 158373 | 09/22/2006 | 04/2006 | | | Report Received No Money | $25750.44 |
| 176175 | 10/31/2007 | 04/2006 | | | Liquidated Damages | $2575.04 |
| 176175 | 10/31/2007 | 04/2006 | | | Interest on Late Contributions | $3090.05 |
| 158374 | 09/22/2006 | 05/2006 | | | Report Received No Money | $13605.35 |
| 176176 | 10/31/2007 | 05/2006 | | | Liquidated Damages | $1360.54 |
| 176176 | 10/31/2007 | 05/2006 | | | Interest on Late Contributions | $1632.64 |
| 158434 | 09/25/2006 | 06/2006 | | | Report Received No Money | $11475.95 |
| 176178 | 10/31/2007 | 06/2006 | | | Liquidated Damages | $1147.60 |
| 176178 | 10/31/2007 | 06/2006 | | | Interest on Late Contributions | $1377.11 |
| 158435 | 09/25/2006 | 07/2006 | | | Report Received No Money | $8259.03 |
| 176179 | 10/31/2007 | 07/2006 | | | Interest on Late Contributions | $991.08 |
| 176179 | 10/31/2007 | 07/2006 | | | Liquidated Damages | $825.90 |



EXHIBIT

2

**GEMGroup**

Bricklayers Local Union 1 of Delaware
C/O  GEMGroup - Claymont
Brandywine Corporate Center
Suite 303
650 Naamans Road
Claymont, DE      19703

| Phone | : | 302.798.6801 |
|---|---|---|
| Toll Free | : | 800.223.7405 |
| Fax | : | 302.798.6929 |

Edward J Wilkinson Co Inc
90 Blue Hen Drive
Newark, DE      19713

Notice Date:    October 23, 2007

# Statement of Employer Status

Below is a statement of your account's status based on reports processed as of the date of this notice.  Please submit payment promptly to avoid additional charges.  If no employees were employed for the work period(s) indicated on this report, please specify and return this report to the Fund Office at the address listed above.  If you should require additional information, you may either refer back to the Discrepancy Invoice(s), or call the Transmittal Department at the Fund Office at the phone number listed above.    (

### Bricklayers and Stone Masons

| Invoice Number | Invoice Date | Work Month | Date Received | Postmark Date | Description | Discrepancy Amount |
|---|---|---|---|---|---|---|
| 158436 | 09/25/2006 | 08/2006 | | | Report Received No Money | $19453.59 |
| 176180 | 10/31/2007 | 08/2006 | | | Interest on Late Contributions | $2334.43 |
| 176180 | 10/31/2007 | 08/2006 | | | Liquidated Damages | $1945.36 |
| 161465 | 12/04/2006 | 09/2006 | | | Report Received No Money | $31150.08 |
| 176192 | 10/31/2007 | 09/2006 | | | Liquidated Damages | $3115.00 |
| 176192 | 10/31/2007 | 09/2006 | | | Interest on Late Contributions | $3738.00 |
| 161466 | 12/04/2006 | 10/2006 | | | Report Received No Money | $30199.46 |
| 176183 | 10/31/2007 | 10/2006 | | | Liquidated Damages | $3019.95 |
| 176183 | 10/31/2007 | 10/2006 | | | Interest on Late Contributions | $3623.93 |
| 163756 | 01/25/2007 | 11/2006 | | | Report Received No Money | $30777.44 |
| 176184 | 10/31/2007 | 11/2006 | | | Liquidated Damages | $3077.74 |
| 163757 | 01/25/2007 | 12/2006 | | | Report Received No Money | $16959.15 |
| 176186 | 10/31/2007 | 12/2006 | | | Liquidated Damages | $1695.92 |
| 167667 | 04/16/2007 | 02/2007 | 04/12/2007 | 04/11/2007 | Liquidated Damages | $876.11 |
| 170876 | 05/10/2007 | 03/2007 | | | Liquidated Damages | $1885.30 |
| 170877 | 06/04/2007 | 04/2007 | | | Liquidated Damages | $1162.04 |
| 171210 | 07/05/2007 | 05/2007 | | | Liquidated Damages | $1423.80 |
| 172362 | 08/07/2007 | 06/2007 | 08/06/2007 | 08/03/2007 | Liquidated Damages | $1724.38 |
| 174027 | 09/12/2007 | 07/2007 | | | Liquidated Damages | $1525.83 |
| 176165 | 10/31/2007 | 09/2007 | | | Report Received No Money | $12023.20 |
| 176166 | 10/31/2007 | 09/2007 | | | Liquidated Damages | $1202.32 |

| Amount Due | $280823.03 |
|---|---|

TR00002

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE (WILMINGTON)**

BRICKLAYERS AND ALLIED CRAFTS :
    UNION LOCAL NO. 1 OF DE/PA WELFARE :
    FUND, et al. :
                                : Civil Action No. 07- 145 (GMS)
                Plaintiffs :
                                  :
    v. :
                                  :
EDWARD WILKINSON CO., INC. :
                                  :
              Defendant :

### <u>DECLARATION OF RICK S. MILLER, ESQUIRE</u>

Rick S. Miller, Esquire, states under penalty of perjury that the following is true and correct.

1.      I serve as Delaware local counsel on behalf of the law firm of Jennings Sigmond.

2.      Attached to the Motion as Exhibit 4 is a computerized billing list showing all work performed by the offices of Jennings Sigmond, P.C. and related costs in connection with the collection of the contributions at issue in this action through October 26, 2007. The computerized listing is prepared from contemporaneous attorney time and expense records, the originals of which are maintained in the regular business records of Jennings Sigmond, P.C.

The identities of those persons performing services connected with this matter are as follows:

| INITIALS | NAME | TITLE |
|----------|------|-------|
| SGR | Sanford G. Rosenthal | Attorney |
| JLT | Jessica L. Tortella | Attorney |
| EAC | Elizabeth A. Coleman | Attorney |
| PL | Philip A. Lozano | Attorney |
| JLH | Jennifer L. Hope | Attorney |
| CTM | Catherine T. Morton | Paralegal |

188003-1



EXHIBIT

3

3.      Attached to the Motion as Exhibit 5 is a computerized billing list showing all work performed by Ferry & Joseph, P.A. and related costs in connection with the collection of contributions at issue in this action through October 31, 2007.

3.      Based upon my review of Exhibit 4 and 5, the Funds have incurred $6,597.85 in attorneys' fees and costs.

Attorney Background and Experience

4.      Sanford G. Rosenthal.  Sanford G. Rosenthal is a firm shareholder and co-leader of the ERISA practice and has practiced law for 23 years. He received his undergraduate education at Pennsylvania State University, where he graduated in 1971. He worked as Audit Manager and Office Manager in the administrative team for the Teamsters Health and Welfare and Pension Funds of Philadelphia and Vicinity from 1971 through 1980. Mr. Rosenthal attended the Dickinson School of Law, where he was awarded the Degree of Juris Doctor in 1983.  Mr. Rosenthal is a member of the Bar of the Supreme Court of Pennsylvania and the District of Columbia Bar. He is also admitted to practice before the United States Court of Appeals for the Third Circuit and the United States District Courts for the Eastern and Middle Districts of Pennsylvania. His practice concentrates on the representation of multiemployer benefit funds in delinquency litigation and counseling. A sample of his litigation experience is available in 32 published cases that be obtained through a Westlaw search for "AT ("Sanford G. Rosenthal") and Jennings" in the FPENS-CS library.

5.      Jessica L. Torella. Jessica L. Tortella was an associate of the firm until June 2007. She graduated from Widener University School of Law in 2002 and was admitted as a member of the Bar of the Commonwealth of Pennsylvania in 2003. Jessica has represented employee benefit plans

since 2003.

6.    <u>Philip A. Lozano</u>.    Philip A. Lozano, an associate in the firm, received his undergraduate degree from Franciscan University in 1996 and his law degree from the Beasley School of Law, Temple University in 2006.  Prior to practicing law, he worked for three (3) years as a pension analyst for the IBM Corporation and five (5) years as a pension consultant for Mercer Human Resources Consulting and Duane Morris LLP.

7.    <u>Elizabeth A. Coleman.</u> Elizabeth A. Coleman is an associate. She graduated in 1999 from Muhlenberg College and received her law degree in 2005 from Villanova University School of Law. She served as Associate Editor of Student Work for the Environmental Law Journal.  Her Note, "In re Hoery v United States: Compensating Homeowners For Loss of Property Value Due to Toxic Pollution under The Continuing Tort Doctrine" was published in the Villanova Environmental Law Journal in 2005.  During law school Ms. Coleman served as a judicial intern for the honorable Susan Peikes Gantman of the Pennsylvania Superior Court.   Following law school, she served as a judicial law clerk for the Honorable Albert J. Snite, Jr, in the Philadelphia Court of Common Pleas, Criminal Trial Division.  Ms. Coleman has been admitted to the Bars of Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

8.    <u>Jennifer L. Hope</u>. Jennifer L. Hope is an associate. She graduated in 1999 from Rutgers University and received her law degree in 2007 from City University of New York School of Law. She served as a staff editor of the New York City Law Review. Her article, co-authored with CUNY School of Law professor and arbitrator Merrick Rossein, "How Far to Cast the Net:

Disclosure and Disqualification Standards for Neutral Arbitrators" was published in the Winter 2007 volume of the St. John's Law Review. During law school, Ms. Hope served as a judicial intern for the honorable Ronald L. Ellis of the Southern District of New York. Ms. Hope has been admitted to the Bar of Pennsylvania.

       9.    <u>Catherine T. Morton</u>. Catherine T. Morton was a Paralegal in the Jennings Sigmond office. She was with the office for six (6) years and is experienced in corporate computer database research, electronic filing procedures throughout the country and preparation and documentation of service of complaints and other pleadings for employee benefit collections matters, in addition to other skills.

<u>Legal Market Benchmark</u>

       10.    The time and fees charged in this case are reasonable based on prevailing market rates for similar services by lawyers of reasonably comparable skill, experience and reputation in the Philadelphia market.

       11.    My opinion that the time and fees are reasonable is based on a number of factors, including the following:

       (a)    Jennings Sigmond, P.C. serves as counsel or co-counsel to over 20 multiemployer employee benefit funds groups. The firm currently has 17 lawyers, with a dedicated benefits department of seven (7) lawyers plus part-time work by three (3) other lawyers in the labor practice. The work is specialized and our competition often is large corporate firms with both employee benefits and federal litigation experience. In my experience, the firms fees are normally substantially lower than the charges of larger firms.

(b)      The hourly rates in this case are consistent with market rates in published surveys by Altman Weil, a leading law firm consultant. Specifically, Altman Weil found a median hourly rate in 2005 of $195 for associates in the Middle Atlantic region (encompassing Philadelphia and Delaware). The hourly rates for associates ranged up to $273 (Mid Atlantic region) at the 90th percentile. See Associate Hourly Billing Rates (March 10, 2006), reprinted from http://www.altmanweil.com/PracticeSpecialtiesRates/. The median rate for partners (shareholders) in employee benefits litigation was $305 per hour, *id.*, Practice Specialties and Hourly Rates (October 1, 2005). The hourly rates in this action, for both associates and partners (shareholders) are clearly less than the median hourly rates set forth above.

(c)      The fees are consistent with market ranges in a 2004 Ohio bar association survey, downloads.ohiobar.org/conventions/convention2005/session508%20Economics%20of%20Law.pdf, especially pages 26 and exhibit 27, especially after giving weight to increases from 2004 to 2006 (roughly 5% per year on average in the Ohio survey) and regional differences reflected in Altman Weil data (Exhibit 6), showing an 8.33% higher rate in median associates' rates in the Middle Atlantic region ($195) over the East North Central region covering Ohio ($180)). The Ohio survey showed median hourly associate rates in the comparable downtown Cleveland, Cincinnati and Columbus areas of $200 - $235 per hour, ranging up to $ 334 - $359 at the 90th percentile. *See*, Exhibit 7 (excerpt page 26). It also shows that a $70 per hour paralegal rate is less than the median rate for 5 years experience in Ohio, without adjustment for regional differences (Ex. 7).

12.      I have executed this Declaration in support of Plaintiff's Motion for Default Judgment against Defendant, Edward Wilkinson Co., Inc.., and request this Court to consider the same as proof

in support of the allegations contained in the Amended Complaint of the Funds and other facts stated

in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 10/29/07

RICK S. MILLER, ESQUIRE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE (WILMINGTON)

BRICKLAYERS AND ALLIED CRAFTS      :
     UNION LOCAL NO. 1 OF DE/PA WELFARE      :
     FUND, et al.      :
              :    Civil Action No. 07- 145 (GMS)
              Plaintiffs      :
              :
     v.      :
              :
EDWARD WILKINSON CO., INC.      :
              :
              Defendant      :

### JENNINGS SIGMOND ATTORNEYS' FEES – SEPTEMBER - OCTOBER 2007

| Date | Attorney | Task | Time |
|------|----------|------|------|
| 9/5/07 | EAC | Phone call with Judge Ludwig's chambers regarding filing Motion for Default Judgment; Preparation of Correspondence to V. Ledgerwood. | 0.2 |
| 9/10/07 | PL | Office Conference with E. Coleman; Review of Delinquency Report; Preparation of Exhibits related to Motion for Default Judgment; Preparation of Order; Preparation of 55(b) Motion. | 2.4 |
| 9/11/07 | EAC | Preparation of Correspondence to V. Ledgerwood; Review Puchalski Declaration; Review Attorneys' Fees. | 0.5 |
| 9/11/07 | PL | Preparation of Correspondence to V. Ledgerwood; Preparation of Correspondence to D. Puchalski; Preparation of Memorandum of Law; Review of Attorneys' Fees; Preparation of Exhibits. | 2.5 |
| 9/13/07 | EAC | Review and Revision of Motion. | 1.3 |
| 9/13/07 | PL | Review and Revision of Motion. | .8 |
| 10/17/07 | JLH | Review and Revision of Motion. Preparation of Correspondence to V. Ledgerwood | 1.5 |

188003-1


EXHIBIT

| 10/18/07 | JLH | Review and Revision of Motion<br>Preparation of Exhibits | 1.5 |
|----------|-----|---|---|
| 10/23/07 | JLH | Review and Revision of Motion:<br>Preparation of Correspondence to V. Ledgerwood<br>Preparation of Correspondence to D. Puchalski<br>Review and Revision of Attorney's Fees | 1.2 |
| 10/24/07 | EAC | Review and Revision of Motion | 1.0 |
|          | JLH | Preparation of Correspondence to R. Miller<br>Review and Revision of Motion | 1.0 |

**TOTAL** **13.9**

**September – October 2007 Summary**

| 10.5 Hrs. x $250 /hour | = | $ 3,475.00 |
|---|---|---|
| 11/06-8/07 Total | = | $ 3,122.85 |
| **TOTAL** | **=** | **$ 6,597.85** |

### *Ferry, Joseph & Pearce, P.A.*
ATTORNEYS AT LAW
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

Ph:   (302) 575-1555    Fax:   (302) 575-1714

Tax ID #:  51-0328068

Bricklayers Local Union No. 1 Pension Trust
The Penn Mutual Towers, 16th Floor
510 Walnut Street

May 7, 2007

Inv #:        23408

Philadelphia, PA 19106
**Attention:**    Sanford Rosenthal, Esquire

**RE:** Edward Wilkinson Co., Inc.

For Professional Services Rendered From            through    Apr-30-07

| DATE | DESCRIPTION | HOURS |
|------|-------------|-------|
| Apr-05-07RSM | Revise and file amended complaint | 0.40 |
| Apr-09-07RSM | Review and file return of service; email to Ms.Tortella | 0.30 |
| Apr-30-07RSM | E-mail correspondence with Ms. Tortella | 0.20 |

| SUMMARY | | RATE | HOURS | AMOUNT |
|---------|--|------|-------|--------|
| | Rick S. Miller | $250.00 | 0.90 | $225.00 |
| | Totals | | 0.90 | $225.00 |

**DISBURSEMENTS**

| Apr-09-07 | Brandywine Process Servers - service | 35.00 |
|-----------|--------------------------------------|-------|
| | Totals | $35.00 |

TOTAL FEE & DISBURSEMENTS            $260.00

Previous Balance            850.00

Previous Payments            850.00

EXHIBIT
5

RECENT DISBURSEMENTS MAY NOT HAVE BEEN ENTERED ON YOUR ACCOUNT AS OF THE DATE OF THIS STATEMENT.
THOSE DISBURSEMENTS WILL BE BILLED AT A LATER DATE.

Invoice #:        23408

**BALANCE NOW DUE**                                    **$260.00**

Invoice #:       23408

**PAYMENT DETAILS**

| | | |
|---|---|---|
| Apr-26-07 | Payment - Thank you | $425.00 |
| Apr-26-07 | Payment - Thank you | $255.00 |
| Apr-26-07 | Payment - Thank you | $170.00 |
| | Total Payments | $850.00 |



## Associate Hourly Billing Rates by Region

Legend:
- Median
- 90th Percentile

| Region | Median | 90th Percentile |
|---|---|---|
| New England | $185 | $250 |
| Middle Atlantic | $195 | $273 |
| South Atlantic | $190 | $270 |
| E. So. Central | $170 | $220 |
| W. So. Central | $175 | $240 |
| E. No. Central | $180 | $275 |
| W. No. Central | $145 | $190 |
| Mountain | $175 | $250 |
| Pacific | $195 | $290 |

Source: Altman Weil Survey of Law Firm Economics
2005 Edition

See following page for states included
in each region.

EXHIBIT
6
tabbies

# Census Regions and Divisions of the United States





# Median Hourly Billing Rates
## Litigation Specialties

Top Five Hourly Rates

Equity and Non-Equity Partners

| Antitrust | IP | Tax | Employee Benefits | Criminal |
|-----------|-----|------|-------------------|----------|
| $380 | $330 | $325 | $305 | $305 |

Source: Altman Weil Survey of Law Firm Economics 2005 Edition



# THE 2004 ECONOMICS OF LAW PRACTICE IN OHIO SURVEY

## Introduction

During the spring of 2004, the Ohio State Bar Association, Section on Solo, Small Firms and General Practice (OSBA) surveyed the Ohio legal community on the economics of law practice. Two online surveys were utilized, replacing the single mail-based survey instrument provided in past years.

With respect to the economics of law practice, similar studies were undertaken in 2001, 1998, 1994 and 1990. The objectives of these studies were to determine, among other things:

- current demographics of practicing attorneys;

- attorney net income by practice category, gender, field of law, office location, work status, years in practice and firm size;

- associate, legal assistant, and secretary compensation by years of experience and office location;

- prevailing average hourly billing rates for attorneys by a variety of indicators, and rates for legal assistants by years of experience, firm size and office location;

- attorney time allocated to billable and non-billable professional activities; and

- overhead expenses associated with maintaining a private practice by office location and firm size.

Attorneys can compare themselves and their firms against "norms" established by the aggregation of survey data. Time series information is also provided to denote trends. Norms include statistics that are organized by combinations of office location, firm size, gender, work status (full-time vs. part-time), practice class, area of legal concentration and years of practice.

The above information has been consolidated into this reference to help guide attorneys as they plan and manage their professional lives.

For 2004, a survey dedicated to law office technology and marketing issues was also fielded at the same time as the economics survey. Findings from this survey are summarized as Current Issues on Law Office Technology and Marketing in Ohio, 2004 and are available at www.ohiobar.org

© 2004 Ohio State Bar Association. All rights reserved.

1

*Economics of Law Practice in Ohio • 9*



## IV. BILLING RATES AND PRACTICES

A. Takeaways.

1. The median hourly billing rate for all attorneys was *$175* for 2004 and *$110* for 1994. The average annual rate of increase in hourly billing rates during this time period was *5.9%.*

2. Rates have increased the most in *suburban Cincinnati* (7.3% per year) and least in *suburban Columbus* (2.5%).

3. Rates increased most for *partners in firms with 8+ partners* (5.9%) and least for *partners in firms with two to seven partners* (3.7%).

4. *Rates increased the most for respondents in* firms with two to five attorneys (6.05%) and least for respondents in *firms with more than 20 attorneys* (4.2%).

5. Rates increased the most for *estate planning attorneys* (9.5%) and *tax attorneys* (7.6%) and least for *bankruptcy* (2%) and *municipal/public entity* attorneys (- 1%).

6. Fifty-six percent of respondents had *not changed* their rates in one year or more.

7. When rates are raised, the prevalent increase is *6-10%* (41% of respondents).

8. *Uncollectibles* (greater than 2% of fees billed) are increasing. The prevalent range is *3-8% of fees billed* (33% in 2004 and 30% in 2000).

9. Attorneys are *increasingly adding service charges* to delinquent accounts where applicable (30% in 2004 compared with 20% in 1990).

B. Implications.

1. There is still pricing power for legal services despite intense competition and an ever growing supply of attorneys.

2. Existing and new practice management benchmarks should be available, especially for solos and small firm practicing attorneys, to enable relative standing self assessments.

## V. ATTORNEY TIME ALLOCATIONS

A. Takeaways.

1. The median value for *total hours* worked in 2004 rose to *50* from *48* in 1990 (2500 hours per year on a 50-week year).

*Economics of Law Practice in Ohio • 3*

**Law Firm Billing Rates and Billing Practices**

## 2004 Attorney Hourly Billing Rates

The reported 2004 median hourly billing rate is $200. The average is $206. While several interacting factors affect the setting and application of hourly billing rates, Exhibit 21 includes three discrete factors: respondents' firm size, years in practice and office location, while Exhibit 22 identifies respondents' primary source of income, and practice category.

**Exhibit 21       2004 HOURLY BILLING RATES BY FIRM SIZE, YEARS IN PRACTICE AND OFFICE LOCATION**

| | | | Value by Percentile | | |
|---|---|---|---|---|---|
| Size of Firm | N | Mean | 25th | Median | 75th | 95th |
| 1 | 196 | $155 | $125 | $150 | $175 | $225 |
| 2 | 55 | 164 | 125 | 150 | 185 | 250 |
| 3-6 | 77 | 176 | 150 | 175 | 200 | 256 |
| 7-10 | 40 | 196 | 150 | 180 | 244 | 300 |
| 11-20 | 39 | 189 | 155 | 195 | 225 | 275 |
| 21-50 | 49 | 206 | 163 | 200 | 238 | 320 |
| 51+ | 72 | 249 | 186 | 240 | 300 | 377 |
| **Yrs. in Practice** | | | | | | |
| 5 or less | 70 | $147 | $125 | $143 | $175 | $222 |
| 6-10 | 78 | 164 | 125 | 150 | 190 | 250 |
| 11-15 | 65 | 185 | 150 | 180 | 228 | 296 |
| 16-25 | 131 | 184 | 150 | 165 | 220 | 306 |
| More than 25 | 183 | 200 | 150 | 190 | 230 | 340 |
| **Office Location** | | | | | | |
| Greater Cleveland | 121 | $200 | $150 | $185 | $238 | $350 |
| Greater Cincinnati | 61 | 199 | 150 | 180 | 245 | 325 |
| Greater Columbus | 120 | 194 | 150 | 180 | 233 | 300 |
| Greater Dayton | 25 | 179 | 150 | 175 | 193 | 296 |
| Northeast Region | 98 | 165 | 125 | 163 | 196 | 250 |
| Northwest Region | 47 | 152 | 120 | 150 | 175 | 263 |
| Southern Region | 56 | 155 | 125 | 150 | 175 | 250 |
| Downtown Cleveland | 61 | $237 | $183 | $235 | $283 | $359 |
| Suburban Cleveland | 60 | 161 | 150 | 150 | 189 | 220 |
| Downtown Cincinnati | 40 | 213 | 153 | 200 | 271 | 368 |
| Suburban Cincinnati | 21 | 173 | 145 | 175 | 183 | 249 |
| Downtown Columbus | 67 | 217 | 165 | 210 | 260 | 334 |
| Suburban Columbus | 53 | 164 | 145 | 150 | 200 | 243 |
| Dayton | 25 | 179 | 150 | 175 | 193 | 296 |
| Canton | 12 | 154 | 116 | 153 | 183 | 250 |
| Akron | 41 | 186 | 150 | 190 | 223 | 273 |
| Toledo | 26 | 170 | 144 | 168 | 186 | 285 |
| Youngstown | 9 | 146 | 113 | 150 | 178 | 200 |
| Northeast Ohio | 36 | 149 | 125 | 138 | 188 | 225 |
| Northwest Ohio | 21 | 129 | 100 | 125 | 150 | 180 |
| Southeast Ohio | 16 | 155 | 125 | 150 | 188 | 250 |
| Southwest Ohio | 25 | 146 | 125 | 150 | 170 | 207 |
| Central Ohio | 15 | 171 | 150 | 165 | 185 | 250 |
| All Attorneys | 530 | $182 | $150 | $175 | $210 | $300 |

**Exhibit 22        2004 HOURLY BILLING RATES BY PRIMARY FIELD OF LAW AND PRACTICE CLASS**

| Primary Field of Law | N | Mean | 25th | Median | 75th | 95th |
|---|---|---|---|---|---|---|
| | | | | Value by Percentile | | |
| Administrative Law | 5 | $241 | $188 | $260 | $285 | $295 |
| Bankruptcy, Debtor | 18 | 135 | 115 | 150 | 168 | 190 |
| Collections | 10 | 146 | 119 | 135 | 164 | 250 |
| Corporate/Business Law | 48 | 201 | 150 | 183 | 225 | 340 |
| Criminal (Public Defendant) | 9 | 139 | 100 | 125 | 175 | 225 |
| Criminal (Private Defendant) | 12 | 154 | 125 | 150 | 173 | 250 |
| Domestic Relations/Family Law | 55 | 173 | 125 | 150 | 200 | 280 |
| Environmental Law/Natural Resources Law | 6 | 200 | 151 | 168 | 283 | 305 |
| General Practice | 14 | 136 | 118 | 132 | 161 | 185 |
| Health & Hospital Law | 6 | 203 | 148 | 195 | 263 | 300 |
| Intellectual Property | 10 | 216 | 174 | 223 | 250 | 300 |
| Labor Law (Management) | 6 | 185 | 150 | 168 | 236 | 255 |
| Employment Law (Management) | 25 | 187 | 138 | 175 | 238 | 324 |
| Employment Law (Labor) | 6 | 178 | 151 | 175 | 208 | 230 |
| Municipal/Public Entity Law | 8 | 164 | 111 | 138 | 225 | 305 |
| Product Liability | 5 | 226 | 138 | 205 | 325 | 425 |
| Personal Injury (Defendant) | 25 | 148 | 110 | 135 | 175 | 270 |
| Personal Injury (Plaintiff) | 43 | 179 | 150 | 160 | 200 | 300 |
| Professional Liability | 6 | 164 | 149 | 165 | 178 | 185 |
| Real Property Law | 26 | 164 | 125 | 150 | 195 | 315 |
| Taxation | 7 | 231 | 175 | 220 | 295 | 300 |
| Trial Practice, not PI (General Civil) | 20 | 190 | 140 | 177 | 200 | 415 |
| Trial Practice, not PI (Commercial) | 20 | 224 | 181 | 210 | 276 | 387 |
| Estate Planning/Wealth Management | 36 | 209 | 175 | 205 | 233 | 308 |
| Probate, Decedents' Estates | 49 | 176 | 150 | 175 | 200 | 250 |
| Workers' Compensation (Plaintiff) | 6 | 167 | 125 | 150 | 213 | 250 |
| Other | 23 | 200 | 150 | 190 | 250 | 358 |
| **Practice Classification** | | | | | | |
| Sole Practitioner | 168 | $153 | $125 | $150 | $175 | $225 |
| Solo with 1+ associates | 42 | 181 | 150 | 175 | 203 | 259 |
| Space Sharer | 21 | 160 | 125 | 150 | 175 | 275 |
| Partner in Firm with 2-7 Partners | 114 | 184 | 150 | 175 | 221 | 300 |
| Partner in Firm with 8+ Partners | 88 | 249 | 196 | 240 | 300 | 381 |
| Associate in Firm with 2-7 Partners | 31 | 156 | 125 | 150 | 175 | 264 |
| Associate in Firm with 8+ Partners | 56 | 180 | 150 | 175 | 210 | 263 |
| **All Attorneys** | 530 | $182 | $150 | $175 | $210 | $300 |

### Hourly Billing Rates for Associates and Legal Assistants

The distribution of hourly billing rates for associates and legal assistants are summarized by years of experience in Exhibit 23, by office location (Exhibits 24 and 25), and by firm size (Exhibits 26 and 27).

**Exhibit 26**    **DISTRIBUTIONS OF 2004 HOURLY BILLING RATES FOR ASSOCIATES BY FIRM SIZE AND YEARS OF EXPERIENCE**

| Associate Billing Rate Category | Firm Size (Number of Attorneys) | | | | |
|---|---|---|---|---|---|
| | 2 | 3-6 | 7-20 | 21+ | All |
| **No Experience** | | | | | |
| <$135 | 57.9 | 78.1 | 69.0 | 43.5 | 61.9 |
| $136-145 | 15.8 | 9.4 | 10.3 | 19.6 | 13.5 |
| $146-155 | 15.8 | 9.4 | 17.2 | 19.6 | 16.1 |
| $156-165 | | | 1.7 | 6.5 | 2.6 |
| $166-175 | 10.5 | | 1.7 | 4.3 | 3.2 |
| $176-199 | | | | 6.5 | 1.9 |
| $225-249 | | 3.1 | | | 0.6 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **3 Years Experience** | | | | | |
| <$135 | 43.8 | 35.3 | 39.0 | 13.0 | 31.0 |
| $136-145 | 18.8 | 20.6 | 22.0 | 19.6 | 20.6 |
| $146-155 | 25.0 | 29.4 | 20.3 | 21.7 | 23.2 |
| $156-165 | | 11.8 | 6.8 | 13.0 | 9.0 |
| $166-175 | 6.3 | 2.9 | 6.8 | 23.9 | 11.0 |
| $176-199 | 6.3 | | 5.1 | 8.7 | 5.2 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **5 Years Experience** | | | | | |
| <$135 | 12.5 | 24.0 | 25.0 | 4.3 | 16.9 |
| $136-145 | 25.0 | 8.0 | 10.7 | 10.6 | 11.0 |
| $146-155 | 12.5 | 40.0 | 25.0 | 10.6 | 22.1 |
| $156-165 | 12.5 | 12.0 | 17.9 | 17.0 | 16.2 |
| $166-175 | | 16.0 | 10.7 | 10.6 | 11.0 |
| $176-199 | 12.5 | | 10.7 | 29.8 | 15.4 |
| $200-224 | 25.0 | | | 14.9 | 6.6 |
| $225-249 | | | | 2.1 | 0.7 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **10 Years Experience** | | | | | |
| <$135 | 33.3 | 14.8 | 19.5 | 5.4 | 14.9 |
| $136-145 | 11.1 | | 4.9 | 2.7 | 3.5 |
| $146-155 | | 22.2 | 14.6 | 5.4 | 12.3 |
| $156-165 | 22.2 | 7.4 | 4.9 | 5.4 | 7.0 |
| $166-175 | | 14.8 | 14.6 | 16.2 | 14.0 |
| $176-199 | | 18.5 | 26.8 | 18.9 | 20.2 |
| $200-224 | 22.2 | 18.5 | 14.6 | 18.9 | 17.5 |
| $225-249 | 11.1 | 3.7 | | 10.8 | 5.3 |
| $250+ | | | | 16.2 | 5.3 |
| Total | 100% | 100% | 100% | 100% | 100% |

**Exhibit 27**    **DISTRIBUTIONS OF 2004 HOURLY BILLING RATES FOR LEGAL ASSISTANTS BY FIRM SIZE AND EXPERIENCE**

| Legal Assistant Billing Rate Category | Firm Size (Number of Attorneys) | | | | |
| --- | --- | --- | --- | --- | --- |
| | 2 | 3-6 | 7-20 | 21+ | All Firms |
| **No Experience** | | | | | |
| $50 or less | 40.0 | 60.0 | 50.0 | 20.0 | 41.0 |
| $51-60 | 30.0 | 20.0 | 20.0 | 17.1 | 20.0 |
| $61-70 | 10.0 | 4.0 | 10.0 | 5.7 | 7.0 |
| $71-80 | 20.0 | 8.0 | 10.0 | 25.7 | 16.0 |
| $81-90 | | 4.0 | | 8.6 | 7.0 |
| $91-100 | | 4.0 | | 17.1 | 7.0 |
| $101-110 | | | | 5.7 | 2.0 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **3 Years Experience** | | | | | |
| $50 or less | 12.5 | 25.0 | 13.3 | 2.8 | 11.7 |
| $51-60 | 62.5 | 35.0 | 23.3 | 11.1 | 24.5 |
| $61-70 | | 20.0 | 26.7 | 22.2 | 21.3 |
| $71-80 | | 10.0 | 13.3 | 11.1 | 10.6 |
| $81-90 | 12.5 | 5.0 | 10.0 | 22.2 | 13.8 |
| $91-100 | 12.5 | | 10.0 | 8.3 | 7.4 |
| $101-110 | | 5.0 | 3.3 | 8.3 | 5.3 |
| $111-120 | | | | 11.1 | 4.3 |
| >$120 | | | | 2.8 | 1.1 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **5 Years Experience** | | | | | |
| $50 or less | 16.7 | 4.5 | 8.6 | 2.9 | 6.2 |
| $51-60 | | 27.3 | 17.1 | 5.9 | 14.4 |
| $61-70 | 66.7 | 22.7 | 11.4 | 14.7 | 18.6 |
| $71-80 | 16.7 | 31.8 | 34.3 | 11.8 | 24.7 |
| $81-90 | | 4.5 | 14.3 | 11.8 | 10.3 |
| $91-100 | | | 11.4 | 17.6 | 10.3 |
| $101-110 | | 9.1 | | 11.8 | 6.2 |
| $111-120 | | | | 11.8 | 4.1 |
| >$120 | | | 2.9 | 11.8 | 5.2 |
| Total | 100% | 100% | 100% | 100% | 100% |
| | | | | | |
| **10 Years Experience** | | | | | |
| $50 or less | 20.0 | | 2.7 | 3.0 | 3.9 |
| $51-60 | 20.0 | 9.1 | 18.9 | 3.0 | 11.8 |
| $61-70 | | 13.6 | 13.5 | 12.1 | 11.8 |
| $71-80 | 30.0 | 40.9 | 18.9 | 6.1 | 20.6 |
| $81-90 | 10.0 | 18.2 | 21.6 | 6.1 | 14.7 |
| $91-100 | | 13.6 | 16.2 | 18.2 | 14.7 |
| $101-110 | | 4.5 | | 12.1 | 4.9 |
| $111-120 | 20.0 | | 5.4 | 18.2 | 9.8 |
| >$120 | | | 2.7 | 21.2 | 7.8 |
| Total | 100% | 100% | 100% | 100% | 100% |

Exhibit 28 displays the impact of firm size on methods for client billing for legal assistants:

**Exhibit 28**    **LEGAL ASSISTANT CLIENT BILLING METHODS BY SIZE OF FIRM, 2004**

| Billing Method for Legal Assistants | Firm Size (Number of Attorneys) | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | 1 | 2 | 3-6 | 7-20 | 21+ | All Firms |
| Included with Attorney Fee | 47.1 | 59.5 | 39.7 | 19.7 | 4.7 | 32.1 |
| Time | 42.9 | 35.1 | 55.2 | 73.8 | 87.5 | 60.7 |
| Fee Schedule | 8.6 | 5.4 | 5.2 | 3.3 | 6.3 | 5.9 |
| Total | 100% | 100% | 100% | 100% | 100% | 100% |

## CERTIFICATE OF SERVICE

I, Rick S. Miller, Esquire, state under penalty of perjury that I caused a copy of the foregoing Memorandum of Law in Support of Motion for Judgment by Default to be served via first class mail, postage prepaid on the date and to the address below:

Edward J. Wilkinson, Co., Inc.
90 Blue Hen Drive
Newark, DE 19713

and

United States Corporation Company
2711 Centerville Road
Suite 400
Wilmington, DE 19808

Date: October 29, 2007    /s/ Rick S. Miller
RICK S. MILLER, ESQUIRE
(#3418)

THIS DOCUMENT HAS BEEN ELECTRONICALLY FILED AND IS AVAILABLE FOR VIEWEING AND DOWNLOADING FROM THE ECF SYSTEM